UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
LINDA LIPORACE,

                       Plaintiff,

  -against-

CELEBRATION ORANGE COUNTY GOSPEL
FELLOWSHIP, FELLOWSHIP OF CHRISTIAN
ASSEMBLIES, and SHELLIE SAMPSON III,

                   Defendants.
-------------------------------------------------------------------------X

**VERIFIED COMPLAINT**

**Civil Action No.:**
**7:26-cv-2626**

**JURY TRIAL**
**DEMANDED**

Plaintiff, by and through her attorneys, BONINA & BONINA, P.C., complaining of the defendants herein, as and for her Verified Complaint in the above entitled action, respectfully shows to this Court, and alleges upon information and belief, as follows:

## JURISDICTION AND VENUE

1.     Plaintiff demands a Trial by jury on all issues.

2.     Jurisdiction exists as against the defendants pursuant to 28 USC Section 1332 in that the plaintiff is domiciled in and is a citizen of the State of Pennsylvania and there is complete diversity of citizenship between the plaintiff and the defendants.

3.     Plaintiff is currently a resident of the State of Pennsylvania.

4.     Upon information and belief, at all times mentioned herein, defendant Celebration Orange County Gospel Fellowship was and still is a religious organization operating within the State of New York, doing business within the State of New York, and maintains its principal place of business in the State of New York.

5.     Upon information and belief, at all times mentioned herein, defendant Fellowship of Christian Assemblies was and still is a foreign religious organization operating within the State

{00199477}

of New York and authorized to do business within the State of New York and maintains its principal place of business in the State of Nebraska.

6.  Upon information and belief, at all times mentioned herein, defendant Shellie Sampson III is, was, and has been a resident of the County of Orange, State of New York.

7.  The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

8.  Venue is properly laid in the Southern District of New York pursuant to 28 USC Section 1391, in that jurisdiction is founded on diversity of citizenship, and a substantial part of the events or omissions giving rise to this claim has occurred in the Judicial District of the United States District Court for the Southern District of New York.

## NATURE OF THE ACTION

9.  This is a case brought by plaintiff, Linda Liporace, who was sexually abused and subjected to several years of grooming as well as emotional and psychological manipulation by defendants' lead pastor and Elder of the Northeast Region, defendant Shellie Sampson III ("Pastor Sampson").

10.  Plaintiff and Pastor Sampson became acquainted in 2002 when their families became neighbors. Over the course of approximately 17 years, Pastor Sampson intentionally and deliberately established multiple overlapping roles of authority and trust over plaintiff by serving as her pastor, marriage counselor, employer, and spiritual advisor. Plaintiff's social, spiritual, and financial life became tightly intertwined with defendants' church, of which Pastor Sampson was the lead pastor of, and its community under Pastor Sampson's direct leadership and undue influence.

{00199477}                                     2

11.    Eventually, the emotional and psychological manipulation eventually escalated to physical sexual assault. On or about November 11, 2019, Pastor Sampson sexually assaulted and abused plaintiff in her own home. On that day, Pastor Sampson visited plaintiff's home under the pretense of discussing church matters. Plaintiff was very hesitant about being alone in her apartment with Pastor Sampson, but under this impression of discussing church matters, she allowed him entry. Upon entering her apartment, Pastor Sampson immediately initiated aggressive sexual conduct by forcibly kissing plaintiff, forcibly touching and fondling plaintiff's body, undressing plaintiff, and overpowering her to perform oral sex. Pastor Sampson intended to rape plaintiff and was positioning and beginning to vaginally penetrate plaintiff with his penis, but an unexpected knock on plaintiff's door interrupted that.

12.    The conduct of defendants, and/or each of them, and/or their agents, servants, employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of New York, including but not limited to violations of Penal Law Sections 130.00, 130.05, 130.20, 130.50, 130.52, 130.55, 130.60, 130.65, 130.65-a, 130.66, 130.67, and 130.70.

13.    Plaintiff brings the within lawsuit to recover for emotional, mental, and physical suffering she incurred because of the intentional, malicious, and sexual acts of defendant Pastor Sampson, and the negligence of defendants Celebration Orange County Gospel Fellowship and/or Fellowship of Christian Assemblies whose negligent hiring, training, and retention of Pastor Sampson caused plaintiff to be sexually assaulted and abused as well as subjected to several years of emotional and psychological manipulation, and to ensure that no other individuals suffer the same abuse that plaintiff suffered.

14.    Further, with the passage of CPLR § 213-c on September 18, 2019, victims who have endured such horrific abuse no longer need to remain silent. CPLR 213-c established a 20-

year statute of limitations window for civil actions brought by victims of sexual assault and abuse. As such, this claim is timely.

15. That prior to the service of this Summons & Complaint, plaintiff has purchased Civil Action Number: 7:26-cv-2626 from the United States District Court for the Southern District of New York.

16. This case falls within one or more of the exceptions to CPLR 1602.

## THE PARTIES

17. Upon information and belief, at all times mentioned herein, defendant Celebration Orange County Gospel Fellowship was and still is a domestic religious organization operating within the State of New York.

18. Upon information and belief, at all times mentioned herein, defendant Celebration Orange County Gospel Fellowship was and still is a domestic religious organization doing business within the State of New York.

19. Upon information and belief, at all times mentioned herein, defendant Fellowship of Christian Assemblies was and still is a foreign religious organization operating within the State of New York.

20. Upon information and belief, at all times mentioned herein, defendant Fellowship of Christian Assemblies was and still is a foreign religious organization authorized to do business within the State of New York.

21. Upon information and belief, at all times mentioned herein, defendant Fellowship of Christian Assemblies was and still is a religious organization doing business within the State of New York on a systematic and regular basis, continues to transact business, engage in other

{00199477}                                                  4

persistent courses of conduct, and/or derive a substantial revenue from goods used or services within the State of New York.

22.    Upon information and belief, at all times mentioned herein, defendant Fellowship of Christian Assemblies has had and continues to have a principal place of business within the State of Nebraska.

23.    Upon information and belief, at all times mentioned herein, defendant Celebration Orange County Gospel Fellowship is a church underneath, overseen, maintained, directed, supervised, and/or funded by defendant Fellowship of Christian Assemblies.

24.    Upon information and belief, at all times mentioned herein, defendants Celebration Orange County Gospel Fellowship and Fellowship of Christian Assemblies contracted to conduct business together.

25.    Upon information and belief, at all times mentioned herein, defendant Pastor Sampson is, was, and has been a resident of the County of Orange, State of New York.

26.    Upon information and belief, from 2009 to 2019, and for a considerable period of time prior and subsequent thereto, defendants Celebration Orange County Gospel Fellowship and/or Fellowship of Christian Assemblies employed defendant Pastor Sampson as the lead pastor of defendants' church.

27.    Upon information and belief, from 2009 to 2019, and for a considerable period of time prior and subsequent thereto, defendant Pastor Sampson worked in, was on the staff of, and/or had access to the congregants of Celebration Orange County Gospel Fellowship, including the plaintiff herein.

28.    Upon information and belief, from 2009 to 2019, and for a considerable period of time prior and subsequent thereto, defendants Celebration Orange County Gospel Fellowship

and/or Fellowship of Christian Assemblies had the ability and the authority to control the activities of defendant Pastor Sampson.

29.    Upon information and belief, at all times mentioned herein, defendant Pastor Sampson is serving, was serving, and has been serving as a USA Regional Leader for defendant Fellowship of Christian Assemblies as an Elder of the Northeast Region.

30.    Upon information and belief, and at all times mentioned herein, Plaintiff Linda Liporace was and has been a resident of the Town of Goshen, County of Orange, State of New York.

31.    Plaintiff Linda Liporace is currently a resident in the State of Pennsylvania.

32.    From 2002 to 2019, and for a consideration period of time prior and subsequent thereto, defendant Pastor Sampson intentionally and deliberately established multiple overlapping roles of authority and trust over plaintiff by serving as her pastor, marriage counselor, employer, and spiritual advisor, built his relationship with plaintiff over several years of emotional and psychological manipulation, and subjected plaintiff to several years of emotional and psychological manipulation.

33.    On or about November 11, 2019, Pastor Sampson sexually assaulted and abused plaintiff in her own home.

## **THE FACTS**

34.    Well before Pastor Sampson's sexual assault of plaintiff in her own home on or about November 11, 2019, Pastor Sampson subjected plaintiff to several years of emotional and psychological manipulation beginning in 2002 by intentionally and deliberately establishing multiple overlapping roles of authority and trust over plaintiff by serving as her pastor, marriage counselor, employer, and spiritual advisor.

35.    In 2004, Pastor Sampson served as plaintiff's marriage counselor during a vulnerable time in her marital life.

36.    Approximately between 2007 to 2009, plaintiff, Pastor Sampson, and other members worked together to form and plant defendant Celebration Orange County Gospel Fellowship in Goshen, NY, under the purview of defendant Fellowship of Christian Assemblies. In 2009, plaintiff was a founding member, Trustee, and Deaconess of defendant Celebration Orange County Gospel Fellowship. Pastor Sampson was its lead pastor. Further, she contributed $50,000.00 towards future church and parsonage development. Plaintiff's social, spiritual, and now financial life became centered within the church and its community under Pastor Sampson's direct leadership and undue influence.

37.    In May 2014, plaintiff confided in Pastor Sampson about a traumatic experience from her teenage years. Following this disclosure, Pastor Sampson began paying increased attention to plaintiff triggering a series of calculated acts of manipulation and grooming.

38.    Pastor Sampson's emotional and psychological manipulation escalated in September 2015 when Pastor Sampson confessed his romantic feelings for plaintiff. Pastor Sampson's pursuit for plaintiff was persistent despite being married and plaintiff's consistent objections to his advances. Over the course of several years, Pastor Sampson would often discuss polygamy and biblical concubines with plaintiff. He often discussed the story of King David with plaintiff and how he cheated on his wife with Bathsheba. He excessively commented on her appearance and clothing at church and even told her to buy push-up bras. Aside from plaintiff, he would comment on other female congregants' appearance and objectify them. On one memorable instance, Pastor Sampson instructed plaintiff to take Deaconess Brigid Callaghan to Victoria's Secret because he didn't like the way her breasts "sagged."

39.     Further, Pastor Sampson coerced plaintiff into numerous hour-long phone and video calls where Pastor Sampson would be undressed, masturbate on camera, and urge plaintiff to participate in these virtual sexual acts, which plaintiff refused to do. During work hours and while plaintiff was working at defendants' church, Pastor Sampson engaged in daily physical misconduct and inappropriate behavior, including regularly striking plaintiff's buttocks. Pastor Sampson coerced plaintiff into giving him back and shoulder massages in the church's conference room. Pastor Sampson is described to have a persistent and volatile personality, and plaintiff would appease Pastor Sampson so this figure of authority in her life would not be angry at her.

40.     The manipulation eventually escalated to physical sexual assault. From 2016 to 2019, the plaintiff dealt with the loss of numerous family members. Further, her daughter was since then married and no longer living with plaintiff and her son was away for college. Pastor Sampson took plaintiff's extremely vulnerable and isolated state as an opportunity to initiate unwanted sexual and physical contact under the guise of "pastoral comfort." In those instances, he pulled her body close to his and pressed his genitals against plaintiff under the pretense of consoling embraces. Plaintiff recalls on numerous occasions feeling his growing erection rub against her body during those "consoling hugs."

41.     On or about November 11, 2019, Pastor Sampson sexually assaulted and abused plaintiff in her own residence after gaining entry under false pretenses.

42.     The sexual assault and abuse that occurred that day was the culmination of several years of grooming, sexual misconduct, exploitation, and emotional and psychological manipulation that Pastor Sampson inflicted against plaintiff while serving as a trusted figure of authority in various aspects of her life.

43.     That evening on or about November 11, 2019, Pastor Sampson visited plaintiff's home under the pretense that he was there to prepare for the men's prayer meeting taking place at defendant church later that night.

44.     He arrived at plaintiff's apartment wearing a dark hoodie and without his glasses so as church congregants would not recognize him.

45.     Plaintiff was uncomfortable with the idea of having Pastor Sampson alone in her apartment. She was worried about what other people, specifically church congregants, would think if they spotted or had knowledge of Pastor Sampson and her alone in her residence. However, Pastor Sampson's pleas to enter were relentless. Plaintiff also feared Pastor Sampson's volatile reaction to rejection and worried about losing her job and position at the church if she were on Pastor Sampson's bad side. Those facts combined with taking Pastor Sampson's word that he was there to discuss church matters, plaintiff allowed Pastor Sampson entry.

46.     Upon entering her apartment, Pastor Sampson immediately initiated aggressive sexual conduct by forcibly kissing plaintiff, forcibly touching and fondling plaintiff's body, and undressing plaintiff.

47.     During the assault, plaintiff dissociated, describing the experience as watching from outside her own body—a well-recognized trauma response to sexual violence.

48.     Further, despite trying to resist, Pastor Sampson easily overpowered her as he was stronger and bigger in stature than plaintiff.

49.     Pastor Sampson climbed on top of plaintiff with the unmistakable intent to vaginally rape her. When plaintiff clearly said, "No," Pastor Sampson simply smirked and continued. Her objections and attempts to resist fell on deaf ears. While Pastor Sampson was

positioning and beginning to vaginally penetrate plaintiff with his penis, an unexpected doorbell ring interrupted his acts.

50.    Pastor Sampson hid while plaintiff hurriedly put on a robe and answered the door. At the door was a pizza delivery person who mistakenly knocked on the wrong apartment. His mistaken knock temporarily halted Pastor Sampson's assault and rape.

51.    Shortly after the interruption, Pastor Sampson pressured plaintiff into continuing having sexual intercourse. He stated he did not want to attend and lead the men's prayer meeting "like this," while rubbing his erection, implying he did not want to go to church while aroused.

52.    When she refused, he forced her into performing oral sex. Plaintiff submitted under extreme duress, perceiving it as the "lesser of two evils" compared to being raped. She performed forced oral sex to completion.

53.    Pastor Sampson left plaintiff's residence later that evening at around 7:50 PM, after sexually assaulting her to subsequently attend and lead the men's prayer meeting.

54.    It was plaintiff's dream to work full time in the ministry, but Pastor Sampson's sexual assault tainted her faith and trust in the church. After years of living in fear and silence, plaintiff bravely disclosed her sexual assault to defendants' church's staff in January 2022.

55.    Sylvia Wright, defendants' church counselor, was someone plaintiff disclosed Pastor Sampson's sexual abuse and rampant grooming to. Plaintiff had previously been assured by Ms. Wright that her counseling sessions would be strictly confidential; however, this trust was betrayed when Ms. Wright disclosed what plaintiff told her in confidence to Pastor Sampson himself. Further, Ms. Wright gave plaintiff unconscionable counsel by telling her to stop running, confront Pastor Sampson directly, admit to her supposed wrongdoing, and ask Pastor Sampson's wife for forgiveness, thus undermining and failing to grasp the dynamics of sexual abuse and the

abuse plaintiff was subjected to as well as putting plaintiff at serious risk of further victimization and retaliation.

56.     Instead of following proper procedures for reporting sexual abuse, reporting the sexual abuse to the church's head of security, or contacting law enforcement, defendants' church leaders made the conscious decision to not notify their head of security, who happens to be a retired NYPD Special Victims Unit officer, and instead informed Pastor Sampson himself, thereby alerting the perpetrator to the disclosure while taking no steps to protect the plaintiff.

57.     The church's actions demonstrated a clear disregard for sexual abuse and a pattern of putting its own interests ahead of protecting victims, including the plaintiff herein, and following the law.

58.     The conduct of defendants, and/or each of them, and/or their agents, servants, employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of New York, including but not limited to violations of Penal Law Sections 130.00, 130.05, 130.20, 130.50, 130.52, 130.55, 130.60, 130.65, 130.65-a, 130.66, 130.67, and 130.70.

59.     Further, defendants Celebration Orange County Gospel Fellowship and Fellowship of Christian Assemblies are vicariously liable and responsible for the actions of their lead pastor and Elder of the Northeast Region, defendant Pastor Sampson, under the corporate complicity/superior officer doctrine as they "authorized, consented to, affirmed, and/or ratified" the egregious abusive and sexual conduct of Pastor Sampson. See *Loughry v. Lincoln First Bank*, 67 N.Y.2d 369 (N.Y. 1986); *Father Belle Community Ctr. v. New York State Div. of Human Rights*, 221 A.D.2d 44; and *Bianco v. Flushing Hosp. Med. Ctr.*, 79 A.D.3d 777.

60.     Defendants Celebration Orange County Gospel Fellowship and Fellowship of Christian Assemblies authorized, consented to, affirmed, and/or ratified the egregious actions of

Pastor Sampson by retaining him as the lead pastor at defendants' church even after they knew of or should have known of Pastor Sampson's sexual abuse of the church's congregants, including but not limited to the plaintiff herein.

61.    Defendants Celebration Orange County Gospel Fellowship and Fellowship of Christian Assemblies are also vicariously liable and responsible for the actions of defendant Pastor Sampson as Pastor Sampson was clearly a superior officer, within the meaning of the corporate complicity doctrine, of defendants as the lead pastor and Elder of the Northeast Region at defendants' church/religious organization. See *Loughry v. Lincoln First Bank*, 67 N.Y.2d 369 (N.Y. 1986); *Father Belle Community Ctr. v. New York State Div. of Human Rights*, 221 A.D.2d 44; and *Bianco v. Flushing Hosp. Med. Ctr.*, 79 A.D.3d 777.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE BASED UPON A THEORY OF STATUTORY LIABILITY AS AGAINST ALL DEFENDANTS

62.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "SIXTY-FIRST" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

63.    The conduct of defendants, and/or each of them, and/or their agents, servants, employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of New York and/or its predecessor statutes.

64.    The conduct of defendants, and/or each of them, and/or their agents, servants, employees and/or staff, constituted violations of Article 130 of the Penal Law of the State of New York, including but not limited to violations of Penal Law Sections 130.00, 130.05, 130.20, 130.50, 130.52, 130.55, 130.60, 130.65, 130.65-a, 130.66, 130.67, and 130.70.

65. The conduct of defendants, and/or each of them, and/or their agents, servants, employees and/or staff, constituted violations of Article 260 of the Penal Law of the State of New York and/or its predecessor statutes, including but not limited to 260.10.

66. That the subject sexual offenses were committed by the defendants and/or their agents, servants, staff, and/or employees against the plaintiff.

67. That as a result of the statutory violations of the defendants herein, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, plaintiff endured sexual assault and abuse, as well as emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering and emotional distress, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

68. That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendants herein.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE BASED UPON A THEORY OF NEGLIGENCE AS AGAINST ALL DEFENDANTS

69. That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "SIXTY-EIGHTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

{00199477}                                    13

70.    At all times mentioned herein, defendants owed a duty of care to their church's congregants and/or church's employees and/or staff., including plaintiff, to keep them safe from sexual abuse, maintain a safe premises, and to keep their congregants free from harm, abuse, assault and other harms, including but not limited to sexual abuse, as well as physical and emotional abuse, from their agents, servants, employees and/or staff.

71.    Defendants breached their duty of care with respect to the plaintiff herein.

72.    Defendants breached their duty of care to plaintiff, failed to keep plaintiff safe from sexual abuse, and were negligent, careless and reckless in failing to protect plaintiff from harm, abuse, assault and other harms, including but not limited to sexual, physical, and emotional abuse from their agents, servants, employees and/or staff.

73.    Defendants and/or each of them and/or their employees, staff, agents, and/or volunteers had actual and/or constructive notice of the sexual abuse and years of emotional and psychological manipulation and failed to institute appropriate measures to prevent and/or stop the abuse and/or manipulation.

74.    Defendants and/or each of them and/or their employees, staff, agents, and/or volunteers had actual and/or constructive notice of the sexual abuse perpetrated by defendant Pastor Sampson and nonetheless retained and kept Pastor Sampson as the lead pastor of their church where he would continue to have access to their congregants for the purposes of sexually abusing them, including but not limited to the plaintiff herein.

75.    That as a result of the negligence and breach of duty of defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the plaintiff endured sexual abuse, sexual assault, as well as physical and emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and

suffering, including psychological suffering, emotional suffering and emotional distress, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

76.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendants herein.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE BASED UPON A THEORY OF NEGLIGENT HIRING, RETENTION, TRAINING DIRECTION AND SUPERVISION AS AGAINST ALL DEFENDANTS

77.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "SEVENTY-SIXTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

78.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to conduct appropriate and proper hiring, screening, placement, and retention practices to prevent the hiring and retention of those who may pose a risk of harm, including but not limited to sexual abuse as well as emotional abuse, to the church's congregants and/or church's employees and/or staff.

79.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to adequately and properly direct and train those whom they did hire and/or retain in a reasonably prudent fashion, to prevent those they hired and/or retained from becoming a risk of harm, including but not limited to sexual abuse as well as emotional abuse, to the church's congregants and/or church's employees and/or staff.

80.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to prevent known risks of harm, and to prevent their employees and/or staff from inflicting harm upon other congregants and/or church employees and/or staff.

81.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to properly and adequately supervise, direct, and train their employees and/or staff so as to ensure the safety of their workplace and/or church.

82.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to properly and adequately supervise, direct and train their employees and/or staff so as to ensure that they carried out their duties in a manner which reduced and/or eliminated the risk of harm, including but not limited to sexual abuse as well as emotional abuse, of their congregants, employees and/or staff, including the plaintiff herein.

83.    Defendants and/or each of them and/or their agents, servants, employees and/or staff had a duty to properly and adequately supervise, direct, and train their employees and/or staff so as to ensure that they did not sexually abuse and/or emotionally abuse others at the workplace and/or church, including the plaintiff herein.

84.    Defendants and/or each of them and/or their agents, servants, employees and/or staff breached their duty to conduct their hiring, screening, placement, and retention practices in a reasonably prudent fashion, and to adequately and properly supervise and/or train their employees and/or staff, including but not limited to defendant Pastor Sampson, in a reasonably prudent fashion.

85.    Defendants and/or each of them and/or their agents, servants, employees and/or staff were negligent, careless and reckless in the manner in which they conducted their hiring, screening and retention of staff, including but not limited to defendant Pastor Sampson, and hired

and retained employees and/or staff who had sexually, emotionally, and/or psychologically abused and/or manipulated other congregants, employees and/or staff, including the plaintiff herein.

86. Defendants and/or each of them and/or their agents, servants, employees and/or staff were negligent, careless, and reckless in the manner in which they supervised, directed and/or trained their employees and/or staff including but not limited to defendant Pastor Sampson, and caused, allowed and permitted their employees and/or staff to sexually abuse other congregants, employees, and/or staff.

87. Defendants and/or each of them and/or their agents, servants, employees and/or staff were negligent, careless, and reckless in the manner in which they supervised, directed and/or trained their employees and/or staff, including but not limited to defendant Pastor Sampson, in that they failed to prevent them from sexually abusing as well as emotionally abusing other congregants, employees, and/or staff in the workplace and/or church.

88. Defendants and/or each of them and/or their agents, servants, employees and/or staff were negligent, careless, and reckless in their failure to properly supervise their agents, servants, employees, and/or staff so as to ensure that they were not sexually abusing as well as emotionally abusing other congregants, employees, and/or staff, including but not limited to the plaintiff herein.

89. That as a result of the negligent hiring, screening, placement, and retention, as well as the negligent training, direction and supervision by defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the plaintiff endured sexual abuse, sexual assault, rape, being robbed, as well as physical and emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering and emotional distress,

{00199477}                                17

mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

90.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendants herein.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPIRACE, BASED UPON A THEORY OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS AGAINST ALL DEFENDANTS

91.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "NINETIETH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

92.    Defendants and/or each of them, and/or their agents, servants, employees and/or staff, had the power, the ability and the authority, as well as the duty, to stop the negligent, improper, unlawful and egregious conduct described hereinabove that resulted in the plaintiff suffering severe emotional distress.

93.    Defendants and/or each of them, and/or their agents, servants, employees and/or staff, had the duty to intervene to stop, prevent and prohibit the negligent, improper, unlawful and egregious conduct described hereinabove that resulted in the plaintiff suffering severe emotional distress.

94.    Defendants and/or each of them, and/or their agents, servants, employees and/or staff, knew or should have known that the failure to properly act would and in fact did cause the plaintiff to suffer severe emotional distress.

{00199477}                                                    18

95.    Defendants and/or each of them, and/or their agents, servants, employees and/or staff, negligently failed to act, stop, prevent and/or prohibit the negligent, improper, unlawful and egregious conduct described hereinabove, thus resulting in the plaintiff suffering severe emotional distress.

96.    That as a result of the negligent infliction of emotional distress of defendants, and/or each of them, and/or their agents, servants, employees and/or staff as aforesaid, the plaintiff endured sexual abuse, sexual assault, rape, being robbed, as well as physical and emotional abuse, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering and emotional distress, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

97.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendants herein.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE, BASED UPON A THEORY OF BATTERY AS AGAINST DEFENDANT SHELLIE SAMPSON III

98.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "NINETY-SEVENTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

99.     The horrific acts of the defendant Pastor Sampson amounted to harmful and offensive contacts to the plaintiff, all of which were done intentionally by the defendant and without the plaintiff's consent.

100.    Such acts were of a sexual and sexually abusive nature, as well as a physically, emotionally, and psychologically abusive nature, and were done without the plaintiff's consent.

101.    Such acts were done for the purposes of degrading and abusing the plaintiff herein and/or to gratify the sick sexual desires of Pastor Sampson.

102.    As a direct and proximate result of the battery and/or sexual battery by defendant Pastor Sampson, the plaintiff was caused to suffer serious and severe personal injuries, emotional distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss and will continue to experience and incur these damages and losses in the future.

103.    That as a result of the battery and/or sexual battery by defendant Pastor Sampson as aforesaid, the plaintiff sustained serious and severe damage, harm and injuries, and was caused to suffer serious and severe personal injuries, emotional distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss and will continue to experience and incur these damages and losses in the future.

104.    That by reason of the foregoing, plaintiff is entitled to compensatory damages from the defendant herein and is further entitled to punitive and exemplary damages.

105.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendant herein.

### AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE, BASED UPON A THEORY OF ASSAULT AS AGAINST DEFENDANT SHELLIE SAMPSON III

106.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED FIFTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

107.    The horrific acts of defendant Pastor Sampson were intended to create and did in fact create a reasonable apprehension in the plaintiff of immediate harmful and offensive contacts including but not limited to sexual contacts to the plaintiff's person, all of which were done intentionally by the defendant and without the plaintiff's consent.

108.    Such acts were of a sexually abusive nature.

109.    Such acts were done intentionally by defendant Pastor Sampson without the plaintiff's consent.

110.    Such acts were done for the purposes of degrading and abusing the plaintiff and/or to gratify the sick sexual desires of defendant Pastor Sampson.

111.    As a direct and proximate result of the sexual assault by defendant Pastor Sampson, the plaintiff was caused to suffer serious and severe personal injuries, emotional distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other

economic damages and loss and will continue to experience and incur these damages and losses in the future.

112.    That as a result of the assault and/or sexual assault by defendant Pastor Sampson as aforesaid, the plaintiff was caused to suffer serious and severe personal injuries, emotional distress, conscious pain and suffering, psychological suffering, emotional suffering, mental anguish and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss and will continue to experience and incur these damages and losses in the future.

113.    That by reason of the foregoing, plaintiff is entitled to compensatory damages from the defendant herein and is further entitled to punitive and exemplary damages.

114.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendant herein.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF LINDA LIPORACE, BASED UPON A THEORY OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS AGAINST DEFENDANT SHELLIE SAMPSON III**

115.    That the plaintiff repeats, reiterates and realleges each and every allegation contained in of the Complaint set forth in paragraphs "FIRST" through "ONE HUNDRED FOURTEENTH" inclusive with the same force and effect as though said allegations were herein fully set forth at length.

116.    Defendant Pastor Sampson engaged in willful, contumacious, and outrageous conduct with respect to the plaintiff, with the intent to cause, and/or with reckless disregard of the probability of causing the plaintiff herein to suffer severe emotional distress.

117.    Defendant Pastor Sampson engaged in willful, contumacious, and outrageous conduct with respect to the plaintiff, with the intent to degrade and abuse the plaintiff, and/or to satisfy and gratify his own sick sexual desires.

118.    Defendant Pastor Sampson committed these horrific acts with malicious, abusive, and oppressive intent, and with the likelihood of causing the plaintiff to suffer severe emotional distress.

119.    That as a result of the intentional infliction of emotional distress by Defendant Pastor Sampson as aforesaid, the plaintiff endured sexual abuse as well as emotional abuse and emotional distress, and sustained serious and severe damage, harm and injuries, and was caused to suffer severe and significant conscious pain and suffering, including psychological suffering, emotional suffering, mental anguish, and loss of enjoyment of life, and has incurred medical, therapy, and/or treatment expenses and other economic damages and loss, and will continue to experience and incur these damages and losses in the future.

120.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds $75,000 pursuant to 28 U.S.C. as well as in excess of the jurisdictional limits of all lower Courts which would otherwise have jurisdiction over the defendant herein.

## STATEMENT REGARDING INTENT TO SEEK PUNITIVE DAMAGES

While not seeking punitive damages as a separate cause of action, plaintiff puts the defendants on notice that defendants' and/or each of their acts and omissions and statutory violations were wanton, reckless, and evidence of disregard of the rights and safety of the general public and of the plaintiff.  Punitive damages will be requested to punish the defendants and deter others from similar conduct.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the First Cause of Action.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Second Cause of Action.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Third Cause of Action.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Fourth Cause of Action.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Fifth Cause of Action.

*WHEREFORE*, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000

exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Sixth Cause of Action.

**WHEREFORE**, LINDA LIPORACE demands a monetary judgment in the form of damages against the Defendants and/or each of them, in an amount which exceeds $75,000 exclusive of interest and costs pursuant to 28 U.S.C. §1332(a) as well as the jurisdictional limits of all lower Courts which would otherwise have jurisdiction on the Seventh Cause of Action, together with the costs and disbursements of this action.

Dated:  Brooklyn, New York
        March 31, 2026

"I have read the foregoing and I certify that, upon information and belief, the source of which is the review of a file maintained by my office, that the foregoing Summons and Verified Complaint is not frivolous as defined in Subsection (c) of Section 130-1.1 of the Rules of the Chief Administrator."

Yours, etc.,

John Bonina, Esq.
Bonina & Bonina, P.C.
*Attorneys for Plaintiff*
32 Court Street – Suite 1700
Brooklyn, New York 11201
Phone No.: (718) 522-1786

/s/ *Basyle Tchividjian, Esq.*

Basyle Tchividjian, Esq. (admitted *pro hac vice*)
Boz Law PA
*Attorneys for Plaintiff*
112 West New York Ave – Suite 207
DeLand, FL 32720
Phone No.: (386) 356-2104

{00199477}                    25

STATE OF NEW YORK, COUNTY OF KINGS             ss:

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

☐

**Attorney's Certification**

certify that the annexed
has been compared by me with the original and found to be a true and complete copy thereof.

☒

**Attorney's Verification by Affirmation**

I, **John Bonina, Esq.**, say that: I am the attorney of record, or of counsel with the attorney(s) of record, for the plaintiff.
I have read the annexed **SUMMONS & VERIFIED COMPLAINT** and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based on the following: By a review of a file maintained in my office.

The reason I make this affirmation instead of Plaintiff(s) is Plaintiff(s) reside(s) in a County other than the one in which I maintain my office.

I affirm that the foregoing statements are true under penalties of perjury.

**Dated:  March 31, 2026**

_____
**John Bonina, Esq.**

STATE OF NEW YORK, COUNTY OF KINGS             ss:

**Individual Verification**

being sworn says: I am the plaintiff in the action herein; I have read the annexed          know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

☐

**Corporate Verification**

the                                         of
a corporation, one of the parties to the action; I have read the annexed
know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based on the following:
Sworn to before me on

------------------------------------------------------------------

-----------------------------------------------------------------

STATE OF NEW YORK, COUNTY OF KINGS             ss:

, being sworn says: I am not a party to the action, am over the age of 18 years of age and reside in                               .
On, I served a true copy of the annexed                     in the following manner:

☐

**Service By Mail**

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee(s) as indicated below:

☐

**Service by E-filing**

by E-filing the same with the Supreme Court - Bronx County to the addressee(s) as indicated below:

☐

**Service By Electronic Means**

by transmitting the same to the attorney by electronic means to the email address or other limitation designated by the attorney for that purpose.  In doing so I received a signal from the equipment of the attorney indicating that the transmission was received.

☐

**Service By Overnight Delivery**

by depositing the same with an overnight delivery service in a wrapper properly addressed.  Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

Sworn to before me on

{00334110}

**Civil Action No.:  7:26-cv-2626**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LINDA LIPORACE,

                        Plaintiff,

     -against-

CELEBRATION ORANGE COUNTY GOSPEL FELLOWSHIP, FELLOWSHIP OF CHRISTIAN
ASSEMBLIES, and SHELLIE SAMPSON III,

                 Defendants.

---

## VERIFIED COMPLAINT

---

**BONINA & BONINA, P.C.**
Attorneys for *Plaintiff*
32 Court Street, Suite 1700
Brooklyn, New York 11201
Tele. No.:  (718) 522-1786
Fax No.:  (718) 243-0414

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

**Dated:  March 31, 2026**

                             Signature: _____
                             Print Signer's Name:  **John Bonina, Esq.**

---

*Service of a copy of the within*                             *is hereby admitted.*
*Dated:* _____

                             *Attorney(s) for*

---

***PLEASE TAKE NOTICE***

☐     *that the within is a (certified) true copy of a and entered in the office of the clerk of the within named Court*
Notice of   *on*
Entry

☐     *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
       *one of the judges of the within named Court,*
Notice of   *at*                         *on*                 *20*   *, at*       *M.*
Settlement
Dated:                                   **BONINA & BONINA, P.C.**
                                  Attorneys for Plaintiff(s)
                                  32 COURT STREET, Suite 1700
                                  BROOKLYN, N.Y. 11201

To:
*Attorney(s) for*

{00334110}